UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | No. 21-CR-44 (SRN) |
| Plaintiff, | |
| v. | ORDER |
| Peter James Monson, | |
| Defendant/Petitioner | |

William Mattessich, Office of the United States Attorney, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Plaintiff United States of America

Peter James Monson, Reg. No. 32015-509, FCI-McKean, P.O. Box 8000, Bradford, PA 16701, Pro Se Defendant

SUSAN RICHARD NELSON, United States District Judge

Pending before the Court are Defendant[1] Peter James Monson's Pro Se Motion to Vacate Under 28 U.S.C. § 2255 [Doc. No. 96] ("§ 2255 Motion"); Pro Se Motion to Supplement § 2255 Motion [Doc. No. 99]; and Pro Se Motion to Compel [Doc. No. 95]. The Government opposes Monson's motions [Doc. No. 101].

Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court denies Monson's § 2255 Motion, denies an evidentiary hearing and certificate of appealability, and also denies his Motion to Compel.

---

[1] Although Monson is the "petitioner" in this habeas proceeding, because all filings are made in the underlying criminal case, the Court will refer to him as "defendant."

1

## I. BACKGROUND

In February 2021, the Government charged Monson by indictment with seven counts of production and attempted production of child pornography and a single count of possession of child pornography, in violation of 18 U.S.C. §§ 2251(a), 2251(e), 2252(a)(4)(B), 2252(b)(2), and 2253(a). (Indictment [Doc. No. 3].) Monson was represented by attorney Peter Wold.

In March 2021, the Court granted the Government's unopposed motion for a protective order. (Gov't's Mot. for Protective Order [Doc. No. 18]; Protective Order [Doc. No. 19].) Shortly thereafter, Monson filed several discovery motions and a suppression motion [Doc. Nos. 21–24]. The Government provided discovery pursuant to the Protective Order, as the materials contained child pornography, related child sexual abuse material, and other information related to child victims. (Doc. No. 26 at 1–2.) The discovery was available for inspection consistent with 18 U.S.C § 3509(d). (*Id.*)

In June and July 2021, Monson moved to continue the pretrial motions hearing because he and the Government were engaged in plea agreement discussions and Monson was awaiting the completion of a psychosexual examination. (Def.'s Mots. for Continuance [Doc. Nos. 30, 33].)

In October 2021, Monson pleaded guilty to two counts of production and attempted production of child pornography (Counts 5 and 7), and one count of possession of child pornography (Count 6). (Plea Agmt [Doc. No. 40] ¶ 1.) In exchange, the Government agreed to move to dismiss the remaining counts at sentencing. (*Id.*) Monson also agreed to waive his right to litigate pretrial motions and to withdraw his previously filed motions.

(*Id.* ¶ 4.) He further agreed to his understanding that by pleading guilty, he was giving up his right to trial, and his right to appeal or collaterally attack his conviction and sentence, except for claims of ineffective assistance of counsel. (*Id.* ¶¶ 5, 14.) Monson affirmed that he had discussed the rights subject to waiver with his attorney, "underst[ood] the rights being waived," and "expressly, knowingly, intelligently, and voluntarily waive[d] these rights[.]" (*Id.* ¶ 14.)

At the hearing on Monson's change of plea, he testified to his understanding of the terms of the Plea Agreement. Under oath, Monson agreed that he had discussed the criminal charges with Mr. Wold, told Mr. Wold everything that he wanted him to know about the case, and was satisfied with Mr. Wold's representation. (Plea Hr'g Tr. [Doc. No. 84] at 5–6, 11.) In addition, he testified that he had read the Plea Agreement and discussed it with Mr. Wold. (*Id.* at 17–18.)

In February 2022, the Court sentenced Monson, (2/25/2022 Minute Entry [Doc. No. 58]; Sentencing J. [Doc. No. 60]), who faced a sentencing guideline range of 960 months imprisonment. (Redacted Sentencing Tr. [Doc. No. 85] at 28.) The Court varied downward and imposed a sentence of 400 months. (*Id.* at 29.)

Monson filed a direct appeal [Doc. No. 62] with the Eighth Circuit Court of Appeals, *Monson v. United States*, No. 22-1562, which the Government moved to dismiss based on Monson's appellate waiver. (Gov't's Opp'n [Doc. No. 101] at 3–4.) On July 25, 2022, the Eighth Circuit dismissed the appeal. (8th Cir. J. [Doc. No. 87].)

Subsequently, Monson filed a petition for a writ of mandamus with the Eighth Circuit, *In re: Peter Monson*, No. 23-1853, in which he sought access to his discovery file.

3

In April 2023, the Eighth Circuit denied his petition and issued its mandate, and later denied Monson's motion to recall the mandate.

On July 10, 2023, Monson timely filed the instant pro se motion for collateral relief under 28 U.S.C. § 2255.[2] He asserts the following four arguments: (1) trial counsel was deficient for failing to ensure that Monson had a complete copy of the discovery file, rendering him unprepared and unable to defend himself against the charges; (2) trial counsel failed to properly defend him against a count that does not constitute child pornography or meet the statutory definition of "sexually explicit" conduct; (3) trial counsel was ineffective at sentencing for failing to ensure that Monson's sentence reflected the § 3553 factors and because his sentence was disproportionate to other similarly situated defendants; and (4) prosecutors committed misconduct by (a) violating Monson's right to discovery; (b) allowing "members of the prosecution team" to give perjured testimony; (c) threatening and intimidating potential witnesses and/or victims; (d) allowing tainted evidence and/or testimony to be entered into the record; and (e) inducing minors to provide false and misleading testimony to create baseless charges against Monson. (Def.'s § 2255 Mot. at 8, Grounds 1–4.) In August 2023, Monson filed his Motion to Supplement the §

---

[2] When a judgment of conviction is appealed and affirmed, and a petition for certiorari is not filed, the judgment becomes final when the time expires for filing a petition for certiorari. *See Clay v. United States*, 537 U.S. 522 (2003). After the Eighth Circuit issued its judgment on July 25, 2022, Monson had 90 days in which to petition for certiorari from the Supreme Court. S. Ct. R. 13.1. Monson's conviction therefore became final on October 23, 2022 (i.e., 90 days after July 25, 2022), and he filed his § 2255 motion within the one-year period that expired on October 23, 2023.

4

2255 Motion ("Motion to Supplement"), elaborating on his arguments in support of Grounds 1 and 4 of the § 2255 Motion.[3] (Def.'s Mot. to Suppl. [Doc. No. 99] at 2–9.)

## II. DISCUSSION

Section 2255 provides that

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

While § 2255 generally affords relief, it is only available in limited circumstances. As the Eighth Circuit has stated, "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *Walking Eagle v. United States*, 742 F.3d 1079, 1081–82 (8th Cir. 2014) (quoting *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)). The petitioner bears the burden of proof as to each ground for relief. *Golinveaux v. United States*, 915 F.3d 564, 567 (8th Cir. 2019) (citing *Kress v. United States*, 411 F.2d 16, 20 (8th Cir. 1969)).

### A. Ineffective Assistance of Counsel

Within the context of § 2255, to establish ineffective assistance of counsel, a movant must satisfy the "heavy burden" of the two-part test of *Strickland v. Washington*, 466 U.S.

---

[3] The Court considers the arguments in Monson's Motion to Supplement to be part of his § 2255 Motion.

668 (1984). *Apfel*, 97 F.3d at 1076. Under *Strickland*, "a convicted defendant must prove both that his counsel's representation was deficient and that the deficient performance prejudiced the defendant's case." *Cheek v. United States*, 858 F.2d 1330, 1336 (8th Cir. 1988).

To establish deficient performance, the movant must demonstrate that counsel's performance was "outside the range of professionally competent assistance," *Cox v. Norris*, 133 F.3d 565, 573 (8th Cir. 1997), such that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Judicial review of counsel's performance is "highly deferential," involving "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689–90. In analyzing counsel's performance, a defendant must show that counsel's errors were not the result of "reasonable professional judgment." *Id*. at 690.

To establish prejudice, the movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. To satisfy a showing of prejudice in cases involving guilty pleas, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *York v. Lockhart*, 856 F.2d 61, 63 (8th Cir. 1988) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

However, "[c]ourts should not upset a guilty plea simply because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Meza-Lopez v. United States*, 929 F.3d 1041, 1045 (8th Cir. 2019) (quoting

6

*Lee v. United States*, 582 U.S. 357, 369 (2017)). Rather, "[j]udges should . . . look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id*. (citing *Lee*, 582 U.S. 369). "Moreover, to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

### 1. Alleged Failure to Provide Full Discovery

Monson alleges in Ground 1 of his § 2255 Motion that his trial counsel was deficient for failing to provide him with "a complete copy of the [d]iscovery [f]ile." (Def.'s § 2255 Mot., Ground 1.) Consequently, he argues, he was unprepared and unable to defend himself against the charges against him. (*Id*.; Def.'s Mot. to Suppl. at 4–5.) He contends that without a complete file, he "could not possibly have instructed his attorney, Mr. Wold, on what experts or witnesses to call in order to rebut the government[']s allegations, nor could he have known how to present an adequate defense, as he was not given access to [d]iscovery." (Def.'s Mot. to Suppl. at 5; Def.'s Reply [Doc. No. 104] at 2–3.) In his Motion to Supplement, Monson contends that he was not shown any discovery whatsoever and was denied his Sixth Amendment right to confront adverse witnesses and obtain exculpatory evidence. (Def.'s Mot. to Suppl. at 3–4.)

Monson's claim fails because he has not demonstrated prejudice. For several reasons, Monson fails to show a reasonable probability that but for Mr. Wold's alleged failure to provide the requested materials, he would have insisted on going to trial, *York*, 856 F.2d at 63, and that the decision to reject a plea deal would have been rational under the circumstances. *Padilla*, 559 U.S. at 372.

7

First, pursuant to the terms of the Protective Order, Mr. Wold was prohibited from providing Monson with any copies of the protected discovery material, but could advise him of the contents and review the material with him as long as Monson read the Protective Order, understood it, and agreed to be bound by it. (Protective Order ¶¶ 4–5.) While Monson's access to protected material was subject to these restrictions, the purpose of the order was to protect against the disclosure of personal information of minor victims, which is consistent with the law. *See* 18 U.S.C. § 3509(d) (governing privacy protections for minor victims). As noted earlier, when Monson twice asked this Court for access to his discovery file, and later sought a writ of mandamus from the Eighth Circuit to obtain access to his discovery file, his requests were denied because of the protected nature of the material.

Second, Monson fails to sufficiently explain how the discovery would have affected his admission to the facts supporting his guilty plea. His sworn testimony at the hearing on his change of plea fully undermines his current position. At the hearing, Monson admitted to the factual bases for his plea without demanding or presenting evidence or reviewing additional materials.[4] (Plea Hr'g Tr. at 34–42.) As Monson acknowledged, some of the facts involved a "catfishing" scheme in which Monson assumed the false identities of teenagers to induce minor victims to produce images and videos of themselves in their underwear or naked, masturbating or engaging in sex acts. (*Id*. at 36–39.) Monson

---

[4] At the hearing, Monson also stated under oath that he was satisfied with Mr. Wold's representation, and the Court found that Monson knowingly, voluntarily, and intelligently chose to plead guilty. (Plea Hr'g Tr. at 6, 44, 45.)

8

admitted that he instructed the minors to send such photos and videos to him and he would offer the images to others to be "rated." (*Id.* at 37.)  Under oath, he admitted that the purpose of his communications was to produce and obtain child pornography.  (*Id.*)  Furthermore, Monson's sworn admissions reflected his familiarity with the videos and photographs themselves, including specific video files or images, identified on the record at the plea hearing by digital file name and/or duration. (*Id.* at 38–39.)  In addition, Monson admitted that he had surreptitiously recorded a minor who was under his care while the child changed her clothes.  (*Id.* at 41.)

Monson's sworn statements and admissions to the facts of his crimes belie his current assertion that because of his attorney's alleged deficiencies, he "does not know the what, who, or how he was accused of committing crimes" and that he "had no idea of the supposed evidence that the government had or didn't have." (Def.'s Mot. to Suppl. at 3, 5; Def.'s Reply at 2 (stating that he "HAS NO IDEA WHAT EVIDENCE—exculpatory or inculpatory–MAY EXIST.") (emphasis in original)).  At no point during the plea or sentencing hearings did Monson express a lack of understanding or confusion about the underlying facts that supported the charges against him.  His sworn statements at the plea hearing carry far greater weight than his post-hoc assertion that but for counsel's alleged errors, he would not have pleaded guilty. *See Meza-Lopez*, 929 F.3d at 1045.

Third, Monson now claims that without access to the discovery, he could not "instruct" Mr. Wold on which witnesses to call in order to present an adequate defense, including expert witnesses.  However, this argument does not demonstrate that if Monson had had unfettered access to all the discovery, he would have insisted on going to trial,

9

*York*, 856 F.2d at 63, let alone that such a decision would have been rational under the circumstances. *Padilla*, 559 U.S. at 372. Notably, Monson did not oppose the Protective Order, his counsel requested and obtained discovery, and the Court twice granted Monson's motions to continue the suppression hearing, allowing him time to consider a plea offer and to make an informed decision about the case. Furthermore, while Monson was certainly entitled to actively participate in his own defense, any determinations about the selection of witnesses would have properly been made by the person with legal expertise, experience, and trial strategy—Mr. Wold.

Finally, in the Plea Agreement and at the change-of-plea hearing, Monson expressly waived his pretrial and trial rights to challenge the Government's evidence against him and further waived the right to obtain information under the Freedom of Information Act and Privacy Act of 1974 about the investigation and prosecution of his case. (Plea Hr'g Tr. at 9–10, 19, 30–32; Plea Agmt. ¶¶ 4–5,16.)

For all of these reasons, the Court finds that Monson's ineffective assistance claim in Ground 1 based on the alleged lack of access to discovery fails. Because the Court finds that Monson has failed to meet the prejudice prong, it need not consider whether he has demonstrated that his counsel's performance fell below an objective standard of reasonableness. *United States v. Lee*, 715 F.3d 215, 221 (8th Cir. 2013) (citing *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999)).

### 2. Alleged Failure to Challenge the Indictment

In Ground 2 of his § 2255 Motion, Monson asserts an ineffective assistance claim based on Mr. Wold's alleged failure to challenge the Indictment (Def.'s § 2255 Mot.,

Ground 2). Monson argues that trial counsel failed to properly defend him against a count that does not constitute child pornography and fails to meet the statutory definition of "sexually explicit" conduct or display. (*Id*.)

The Eighth Circuit has found it well settled that "[i]n order for a defendant who has pleaded guilty to sustain a challenge to the district court's jurisdiction, he must establish that the face of the indictment failed to charge a federal offense." *United States v. Pemberton*, 405 F.3d 656, 659 (8th Cir. 2005) (citing *Mack v. United States*, 853 F.2d 585, 586 (8th Cir. 1988)).

However, as the Government notes, Monson fails to identify the count or charge in question, nor does he provide any legal authority in support of his argument, even though he had the opportunity to do so in his Reply. While Monson refers to a single count that he argues should have been challenged, the Indictment charged him with a total of eight counts. Monson's conclusory allegations do not meet the standard for relief under § 2255. *See Bryson v. United States*, 268 F.3d 560, 562 (8th Cir. 2001) (affirming district court's dismissal of ineffective assistance claim because movant's allegations were brief, conclusory, and failed to cite to the record). Moreover, as the Court has noted, Monson knowingly, voluntarily, and intelligently pleaded guilty to the counts of conviction as set forth in the Indictment. "An indictment is sufficient if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." *United States v. Cavins*, 543 F.3d 456, 458 (8th Cir. 2008) (quoting *United States v. Fleming*, 8 F.3d 1264, 1265 (8th

Cir. 1993)). Again, Monson does not show a reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *York*, 856 F.2d at 63. Accordingly, he fails to demonstrate prejudice and this ground for relief fails.

### 3. Alleged Errors at Sentencing

In Ground 3, Monson contends that "[t]rial counsel failed to ensure a sentence that properly reflected 3553(a) factors," and that "[t]he 400 month sentence was disproportionate to both the Circuit and National averages for similarly situated defendants." (Def.'s § 2255 Mot., Ground 3.) Monson characterizes his sentence as a "life sentence" and contends that in 2018, the average sentence for murder was 244 months, by comparison. (Def.'s Mot. to Suppl. at 5.)

This ground for relief fails. Mr. Wold's performance was not outside the range of professionally competent assistance, nor does Monson demonstrate prejudice. *Cox*, 133 F.3d at 573. Monson's 400-month sentence reflected a significant downward variance from the U.S. Sentencing Guidelines' 960-month advisory imprisonment range on three counts. (Redacted Sentencing Tr. at 4.) Mr. Wold quite capably advocated for a sentence of 240 months and lifetime supervised release, expressly connecting his request to sentencing factors under 18 U.S.C. § 3553(a). (*Id*. at 5–8.) In particular, he emphasized mitigating factors such as Monson's personal trauma and childhood experiences and his recent efforts to address his conduct. (*Id*. at 8.) However, the fact that the Court did not sentence Monson to his requested term of 240 months was no reflection on Mr. Wold's representation. If Monson had insisted on going to trial and been convicted, he would have

12

faced the prospect of a longer sentence, as he would have received no reduction for acceptance of responsibility.

Moreover, with respect to Monson's contention that Mr. Wold failed to "ensure" a sentence that "properly reflected" the § 3553 factors (Def.'s § 2255 Mot., Ground 3), Monson expressly understood that while the parties agreed upon a recommended sentencing range, the Court would determine his ultimate sentence and was not bound by the Plea Agreement. (Plea Hr'g Tr. at 27, 33–34; Plea Agmt. ¶ 10.)

While Monson also argues that his sentence is disproportionate to the sentences of similarly situated defendants, his sentence falls within the range of sentences in this District for offenders with the same offense level and criminal history category who were convicted of production of child pornography and possession of child pornography. While some have received shorter sentences of 240 months, *United States v. Hinkle*, No. 18-cr-185 (SRN), and 300 months, *United States v. Bjerknes*, 17-cr-234 (WMW), others have received a longer sentence of 456 months, *United States v. Martynenko*, 16-cr-13 (RHK). Here, the Court properly considered both aggravating and mitigating factors when fashioning an appropriate sentence for Monson. (Sentencing Hr'g Tr. at 28–31.)

For all of these reasons, Monson's claim that his counsel provided ineffective assistance at sentencing (Def.'s § 2255 Mot., Ground 3) fails to provide any relief.

### B. Allegations of Prosecutorial Misconduct

In Ground 4 of his § 2255 Motion, Monson alleges prosecutorial misconduct, asserting that prosecutors infringed upon his rights by: (1) violating his rights to discovery under *Brady* and *Giglio*; (2) "allowing members of the prosecution team to give perjured

testimony by . . . threaten[ing] and intimidate[ing] potential witnesses and/or victims"; (3) "by allowing tainted evidence and/or testimony to be entered into the record"; and (4) "by soliciting minors to bolster their case, by way of 'catfishing' and coercion, as well as by inducing minors to provide false and misleading testimony in an effort to create bogus charges against Mr. Monson." (Def.'s § 2255 Mot., Ground 4.)

None of these allegations afford Monson relief. First, the Court finds no evidence of *Brady* and *Giglio* violations. As the Court has explained, discovery was provided to Monson's counsel pursuant to the Protective Order, including any potentially exculpatory information. (Gov't's Opp'n at 2 n.1.) Pursuant to the Protective Order, defense counsel could advise Monson of the contents of the protected material and review it with Monson, without providing copies, subject to Monson having read the Protective Order, and agreeing to be bound by it. (Protective Order ¶ 5.) Nothing in the record supports Monson's speculation that the Government violated its duties under *Brady* and *Giglio*.

The Court further rejects Monson's claim that by denying his requests for discovery materials, the Court is "complicit" in the Government's "misdeeds." (Def.'s Mot. to Suppl. at 8; *see also* Def.'s Reply at 4–5.) As the Court has repeatedly noted, the discovery materials in question were properly subject to the Protective Order and the defense had ample opportunity to review them.

Monson's remaining allegations are directly contradicted by his sworn admissions at the hearing on his change of plea. His allegations against "members of the prosecution team" for using threats and intimidation such that witnesses or victims gave perjured testimony are unsupported. The notion that witnesses gave statements in which they falsely

14

accused Monson of certain conduct, leading to "bogus charges," is ultimately belied by Monson's sworn admissions to his crimes of conviction. Furthermore, he fails to identify the allegedly "tainted evidence" and "false testimony" that the Government "allowed" to be admitted into the record and offers neither support nor details for his claim that investigators improperly "induc[ed]" or entrapped minors to offer false testimony.

Accordingly, Ground 4 of Monson's § 2255 Motion, alleging prosecutorial misconduct, fails to provide any relief.

### C. Evidentiary Hearing

A § 2255 motion may be dismissed without a hearing if: (1) the defendant's allegations, if accepted as true, would not entitle him to relief; or (2) the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions, rather than statements of fact. *Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998). Moreover, where the record includes all of the information necessary for the court to rule on the motion, an evidentiary hearing is unnecessary. *Covey v. United States*, 377 F.3d 903, 909 (8th Cir. 2004) (citations omitted). Applying this standard to the allegations and the record, the Court finds that Monson's allegations are contradicted by the record, and the record includes all the information necessary for the Court to rule. *Covey*, 377 F.3d at 909. Accordingly, no evidentiary hearing is required.

### D. Certificate of Appealability

In order to appeal an adverse decision on a § 2255 motion, a movant must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability cannot be granted unless the petitioner "has made a substantial showing of the denial of a

15

constitutional right." 28 U.S.C. § 2253(c)(2). This Court has considered whether the issuance of a certificate is appropriate here and finds that the basis for dismissal is not reasonably debatable. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). Accordingly, the Court declines to issue a certificate of appealability.

### E. Motion to Compel

Also before the Court is Monson's Motion to Compel Defense Counsel to Surrender the Case File. Granting Monson his requested relief would violate the terms of the Protective Order, which the Court has addressed herein. Accordingly, his motion is denied.

## III. CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that

1. Monson's Pro Se Motion to Vacate Under 28 U.S.C. § 2255 [Doc. No. 96] and his Pro Se Motion to Supplement § 2255 Motion [Doc. No. 99] are **DENIED**.

2. A certificate of appealability is **DENIED** and no evidentiary hearing is necessary.

3. Monson's Pro Se Motion to Compel [Doc. No. 95] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: December 20, 2023

                                                  s/Susan Richard Nelson
                                                  SUSAN RICHARD NELSON
                                                  United States District Judge